STATE of Maine

v.

Richard W. GRINDLE.

Supreme Judicial Court of Maine.

Argued March 12, 1980.

Decided April 24, 1980.

Charles K. Leadbetter (orally), P. J. Perrino, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

Jerome B. Goldsmith (orally), Marshall A. Stern, Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

ROBERTS, Justice.

Richard Grindle appeals from his conviction for murder, 17–A M.R.S.A. § 201, following a trial without jury in the Superior Court, Hancock County.[1] Grindle contends that the presiding justice relied on inadmissible evidence of Grindle's conduct a week prior to the offense charged to find that the defendant had "a propensity for violence," and to support a finding of guilt. Grindle

1. Grindle waived a jury trial in accord with M.R.Crim.P. 23(a).

also challenges the sufficiency of the evidence. We affirm the judgment of conviction.

Most of the facts in this case were uncontested. Grindle admitted that he caused the death of one Kenneth Stover. He denied only that his act was either intentional or knowing.

Grindle lived across the street from Stover and Kathy Kippen, who was living with Stover at the time of the shooting. Mrs. Kippen had recently separated from her husband, Russell Kippen, who had then begun living with Stover's ex-wife. Kathy Kippen had taken with her some items of marital property, including a GMC truck. After she left, Russell Kippen was offered fifty dollars for the truck, but he was unable to get Kathy to return it. He decided there was nothing he could do about it. Grindle knew of this and for some reason took personal offense at it.

Grindle was on friendly terms with the decedent. On the day of the shooting, February 17, 1979, they spent time together, and there was no conflict. However, Grindle suggested that Stover move the truck because there might be trouble that night.

That night Grindle went to a party at Russell Kippen's home. Grindle told Kippen that he was sick and tired of people using Kippen the way Kathy Kippen was, and said Kippen should go and shoot a few holes through the truck. Kippen said he didn't feel "used" and told Grindle to forget it.

Kippen testified that Grindle had been drinking, but he wasn't falling down or stumbling. Other witnesses also testified that Grindle, although he had drunk as much as a half of a fifth of whiskey, was not so drunk that he was falling down or unaware of what he was doing.

After Grindle got home from the party, he went out with his rifle and fired twice into the truck. He then went to Kenneth Stover's trailer, knocked and was let in. He told Stover and Kathy Kippen that they should return the truck to Kippen. Stover began arguing with him. After about five minutes, Stover took a step or two forward, raising his hands in a gesture of some kind. At this moment Grindle fired the gun, between a foot and a half and three feet from Stover's chest. Kathy Kippen witnessed the entire incident and described it at trial.

Exactly what Grindle had done with his gun prior to the shooting was disputed at trial. Kathy Kippen testified that he had the gun loosely at his side, but pointed at Stover during the argument. Grindle "jacked" the gun when he first came in, and said, "I have shot two at the truck and I have two more rounds." Grindle denied saying that, and testified that he thought the gun was empty after he shot at the truck. He said that he jumped back when Stover moved toward him and the gun went off accidently.

On February 9, a week before the shooting, Grindle had been involved in another incident with his gun. He had gone to a party at Russell Kippen's house, left and returned with the gun. Grindle told Kippen that one Linton Bickford had grabbed his wife and he (Grindle) ought to shoot him. Kippen told him he was crazy and asked for the gun, which Grindle gave him without argument. The gun was loaded with five shells. The shells and the gun were returned to Grindle at different times.

When the State first sought to introduce Russell Kippen's testimony describing the incident on the night of February 9, the defense objected on the ground of relevance. The State responded that it was not offering the testimony to show that Grindle threatened Bickford, but only to show that Grindle's gun was taken from him that evening, the relevance of which would be established through other witnesses. The court admitted the testimony "de bene under that condition," i. e., the admission was for a limited purpose pursuant to M.R.Evid. 105. "De bene" means a conditional admission upon a representation that relevance will be established by evidence subsequently offered, pursuant to M.R.Evid. 104(b). See Advisers' Note to M.R.Evid. 104; R. Field and P. Murray, Maine Evidence, § 104.3, at 13–18 (1976). The state later used the testi-

mony, in connection with other testimony showing that the gun was returned to Grindle unloaded, to argue that Grindle must have known the gun was loaded when he shot Stover.[2]

At no time did Grindle's counsel request a ruling on the *"de bene"* admission of the evidence. Opposing counsel must make a motion to strike if evidence conditionally admitted under Rule 104(b) is to be excluded on the ground that its relevance has not been established. *See* Advisers' Note to M.R.Evid. 104; R. Field and P. Murray, *supra*, § 104.3 at 18. However Grindle does not now object to the use of the evidence for the limited purpose of showing evidence of knowledge that the gun was loaded. Instead, his argument is based on the following comment by the presiding justice at the commencement of his remarks when he delivered his findings from the bench:

> The Defendant had shown a propensity for violence with a gun some week before, and on the night of February 17, 1979, showed a propensity for violence by shooting two bullets into a truck situated near Kenneth Stover's mobile home.

Grindle argues that the presiding justice, in finding a "propensity for violence," violated his own ruling limiting the use of the evidence concerning the February 9 incident.

Grindle's prior conduct would have been inadmissible, on direct examination by the State, to prove Grindle's "propensity for violence." M.R.Evid. 404(a) specifically excludes evidence of a person's character to prove he acted in conformity therewith, except that, under Rule 404(a)(1), an accused may offer such evidence, and if he does, the prosecution may introduce rebuttal character evidence. M.R.Evid. 405(a) provides that

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Here, the State did not offer the February 9 incident to prove character. The State's questioning of its witness, Russell Kippen, was limited, but it did evoke the following:

Q When he came back, what did he do?

A He had a thirty-thirty rifle and he said he wanted to talk to me. I said, "What are you doing with that rifle?". He says, that Lint Bickford grabbed his old lady, I guess, and he wanted to shoot him with it.

Q What did you do?

A I said, "Give me that gun, you're crazy, just go home and go to bed, you must be drunk or something." He gave me the gun with no problem and left.

Q Was the gun loaded?

A Yes, it was.

The defendant did not renew his objection because the presiding justice had already limited the purpose for which the testimony was admitted.[3]

As part of the defendant's case, Grindle testified that at the time of the shooting of Stover, he had thought the gun was empty, because it was returned to him empty after the previous incident and he had just fired at the truck the only two shells he remembered putting into the gun. The defense also attempted to discredit the testimony of Kathy Kippen, an eye-witness to the shooting, by means of Grindle's testimony that he and Kathy Kippen had sexual relations on the night of February 9.

---

**2.** We caution counsel that for effective appellate review and to enable opposing counsel to protect his client's interest, a clear statement should be made on the record as to the purpose for which evidence with limited admissibility is offered under Rule 105.

**3.** We do not intend to condone the careless manner in which this evidence was used by the prosecution. Specific evidence of a threat to another was not necessary to accomplish the only legitimate purpose for which the incident was relevant, *i. e.*, to show that the gun was returned to Grindle unloaded. In the context of this case, however, the overall effect was harmless.

On cross-examination, the State began inquiring into the February 9 incident, without objection from the defense. The first question which the State asked focused on Grindle's threatening of Linton Bickford, apparently in order to throw doubt on defendant's story that he had relations with Kathy Kippen. The questioning included the following:

Q   Did you see Lint fool around with your wife that night?

A   Yes, I caught him in the corner of my eye.

Q   You are a pretty jealous fellow, aren't you?

A   Yes.

Q   You don't like anyone fooling around with your wife?

A   Nobody does.

Q   Is that why you went back and got a gun?

A   No.

Q   What did you go back and get the gun for?

The defendant then testified that his reason for returning to the party with a gun was to have an excuse to get away from his wife for his liaison with Kathy Kippen. The State inquired at length into this story, still without objection from the defense. Only later did the State begin questioning Grindle about the gun.

On redirect, defense counsel inquired further into defendant's story that the threatening of Bickford was a mere pretext to enable Grindle to meet with Kathy Kippen. At the end of redirect, defense counsel asked the defendant if he is a violent person, and Grindle responded that he is not. The State did not object.[4]

Under Rule 405(a), the State could have inquired on recross-examination into the February 9 incident to rebut Grindle's character testimony. The State missed the opportunity. Thereafter, in the course of direct examination of defendant's wife, Vadeen Grindle, defense counsel again asked whether Grindle is "a violent person." Mrs.

Grindle did not respond directly, asking instead what counsel meant by "violent." She then said she had never seen her husband in a fight.

Only after Vadeen Grindle testified did the state finally conduct an inquiry on which the presiding justice could properly rely. The cross-examination of Vadeen Grindle was as follows:

Q   You remember the birthday party a week before?

A   Yes, I do.

Q   You remember Lint Bickford making some sort of advance at you?

A   It wasn't an advance.

Q   What was it?

A   He was just fooling around, he patted me.

Q   Patted you on the butt?

A   Yes.

Q   Your husband got a little upset about that, didn't he?

A   Yes.

Q   You went home, is that right?

A   Yes.

Q   With your husband?

A   Right, yes.

Q   He went and got a gun?

A   Yes.

Q   A rifle?

A   Yes.

Q   You saw him do that?

A   Yes.

Q   Did you see him take the shells at that time?

A   No.

Q   You knew later on there were shells in the gun because someone returned the gun?

A   That's right

Q   He went to the party?

A   That's right.

This testimony was admissible under Rule 405(a) to rebut the character testimony of defendant and his wife, and the presiding justice did not err in relying on it. The judge's comment upon a "propensity for

---

4. The State asserts that this testimony violated Rule 405(a). As no objection was raised at trial, we need not decide this question on appeal.

violence" simply indicated his rejection of the defense assertion of Grindle's non-violent nature, a permissible use of the evidence of a prior instance of conduct.

■ We also reject the defendant's contention that the evidence was insufficient to support a conviction for murder under 17–A M.R.S.A. § 201. Section 201(1)(A) provides that "A person is guilty of murder if: (A.) He intentionally *or* knowingly causes the death of another human being" (emphasis added).[5] Our review of the record persuades us the presiding justice could have concluded beyond a reasonable doubt that the defendant acted knowingly when he fired his rifle at Kenneth Stover at point blank range. The evidence would support a finding that Grindle loaded five cartridges into his rifle shortly before the shooting, and that contrary to his testimony, Grindle must have been aware the gun was loaded. In the words of the Criminal Code's definition of "knowingly," 17–A M.R.S.A. § 10(2)(A), Grindle must have been "practically certain" that Stover's death would result from his conduct. It was not necessary for the state to prove in addition that such a result was Grindle's "conscious object," 17–A M.R.S.A. § 10(1)(A).

We are persuaded that the presiding justice did not rely on inadmissible evidence concerning the February 9 incident to supply any necessary element of intent or knowledge. The presiding justice's remarks from the bench indicate that he had found all of the necessary elements of murder. The judge said:

> Now, the facts in this case are that the defendant . . . pointed a loaded rifle, fully cocked, at Kenneth Stover for several minutes during an argument.
>
> That the gun was . . . discharged striking Kenneth Stover in the chest . . . .

The presiding justice also discussed the requisite culpable state of mind at length, rejected defendant's intoxication defense, and stated that there was no evidence of provocation or self-defense, or that the shooting was an accident. During this discussion, he made no mention of "propensity for violence." We conclude that there was no error in this finding, and that the judgment must be affirmed.

The entry is:

Appeal denied.

Judgment of conviction affirmed.

All concurring.

---

5. "Intentionally" and "knowingly" are defined in 17–A M.R.S.A. § 10:

1. "Intentionally."
A. A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.
B. A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes that they exist.

2. "Knowingly."
A. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.
B. A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.